Statement of the Case.
MONROE, J.
Plaintiff, as a stockholder, proceeded against the defendant company *189 for the appointment of a receiver, and, the district court having made the appointment, 'defendant has appealed. The petition alleges that the defendant company was organized for the canning of vegetables, and that its factory has been completed for more than a .year, but that its officers have not operated it; that the directors have not met “for some time past”; that the stock subscriptions have not been collected, and no effort has been made to collect them; that the company has no funds, and that its funds have been squandered in the payment of salaries to persons who rendered no service; that by reason of the neglect of the officers the property of the company is deteriorating in value; that the company is insolvent; and that it is in the interest of the stockholders and creditors that a receiver should be appointed.
The facts disclosed upon the hearing of the case are as follows: Some time in March, 1907, an association was formed, at Kenner, for the definite purpose of establishing a canning plant, at a cost of $3,500, on land for which it was to pay $400; and it appears to have been understood that it should be incorporated, with a capital of $15,000, divided into 150 shares, of $100 each, of which $9,-750 was subscribed, mostly in small sums, as we infer, by truck farmers. Of the amount so subscribed, $8,450 was collected by the contractor, who put up the plant, and who accepted that amount as in full. The -owner of the land on which the plant was erected took three shares of stock in part payment of the price, and the president of the association advanced the remaining $100 from his own pocket. The members of the .association had a meeting and elected a president, a secretary, treasurer, and board of directors. The board of directors met, for the first time, on March 15, 1907, and thereafter -on March 17, 20, and 21, April 2, May 8, and June 2,1907. On February 8, 1908, there was a general meeting of the stockholders, and on May 6, 1908 (after the institution of this suit), there was another meeting of the directors. In the meanwhile, on May 15, 19Q7. the company was incorporated. At the first meeting of the directors, on March 15, 1907, the secretary was authorized to employ an engineer to inspect the plant, as a preliminary to its acceptance, and a committee was appointed with authority to contract for the boring of a well. At the next meeting provision was made for giving some needed attention to the plant- — to stop the leaking of the steam, replace the foundation of the engine, etc., which work was reported on at the next meeting. On March 21st the plant was accepted. On April 2d the secretary was instructed to make inquiries about a “process man.” On May 8th there was no quorum. On June 2d it was reported that a “process man” would cost $125 per month, plus railroad fare, and wanted a contract for six months, and it was decided not to engage him “on account of high prices of tomatoes, due to a short crop.” At the stockholders’ meeting, on February 9, 1908, most of those present promised to plant from one-half an acre to three acres of different vegetables for the 1908 season. The well had, in the meanwhile, been bored, at a cost of $850, and the company had contracted further debt, for legal services and insurance premiums, to the amount of $400, making a total of $1,250 of indebtedness, as against the value of the plant (including the lot), $8,900, and the well, $850, or a total of $9,750 of assets. No salary has ever been paid to any officer, or agreed to be paid, and, as no money has ever gone into the hands of any officer, none has been squandered. They did not operate the plant, because there was a failure of the vegetable crop, and, as the price of their raw material was too high, they could only have operated at a loss. They did not collect the unpaid balance of the stock subscriptions, because the subscribers were un *191 willing and unable to pay, and they did not consider it worth while to sue. The people who bored the well, after waiting some six or seven months, brought a suit, asking that a receiver be appointed, and the record in that case was offered in evidence in this. Why they did not sue directly for their money, does not appear. It does appear, however, that but for this suit the president of the defendant company would have borrowed $1,-500 on mortgage, and paid all that the company owes. It also appears that, in consequence of this suit, the directors have authorized inquiries to be made with a view of finding a purchaser for the plant. It may be stated, in the conclusion, that the plaintiff herein, when placed on the stand, admitted that he knew nothing of any mismanagement or extravagance; the fact being that.he had become dissatisfied because the company had been in existence for a year and had done nothing, and he assumed as verity the evil alleged in his petition. It may further be stated that the charter of the company provides for its dissolution, “with the assent of stockholders' holding a majority of the outstanding stock,” and its liquidation “under the supervision of three stockholders, to be elected,” etc.
Opinion.
The allegations of neglect, mismanagement, misuse of corporate funds, etc., contained in the petition; being entirely unsupported by proof and in fact disproved, plaintiff, as a stockholder, presents no case for the appointment of a receiver. Posner v. Southern Evhaust and Blowpipe Co., 109 La. 658, 33 South. 641; Sheehan v. O’Rourke Iron Works, 112 La. 461, 36 South. 495; Saxon v. Southwestern Bench & Tile Mfg. Co., 113 La. 638, 37 South. 540; Von Schlemmer v. Keystone Life Insurance Co., 121 La. 987, 46 South. 991.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that this suit be dismissed, at the cost of plaintiff in both courts.